IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BOBBY JOE JACKSON                                               PLAINTIFF

                v.                      Civil No. 05-5043

ROBERT ERIC HOLLAND,
Detective with the Springdale
Police Department; and SID RIEFF,
Chief of Police for the Springdale
Police Department                                    DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Bobby Joe Jackson brings this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis. Jackson contends his constitutional rights were violated when Detective Robert Eric Holland used excessive force against him in an interview room at the Washington County Detention Center.

On July 21, 2005, defendants filed a motion for summary judgment (Doc. 15). By order entered on September 15, 2005 (Doc. 18), Jackson was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. On October 20, 2005, plaintiff's response to the court's questionnaire (Doc. 19) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

AO72A
(Rev. 8/82)

## I. BACKGROUND

On December 6, 2004, Jackson was being held at the Washington County Detention Center (WCDC). *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. Jackson was awaiting plea and arraignment. *Id.* at ¶ 22.

Detective Robert Eric Holland came to the WCDC to interview Jackson. *Id.* at ¶ 2.

By affidavit, Holland describes the encounter as follows:

> I attempted to interview Bobby Joe Jackson inside the Washington County Jail regarding a stolen motor vehicle found in the area. That before any questions could be asked about the stolen car, Mr. Jackson became unruly. Mr. Jackson then stood up and continued to be unruly. I repeatedly directed Mr. Jackson to sit down. He refused to do so.
>
> That I walked towards Mr. Jackson, placed my hand upon his shoulder, and using slight pressure, assisted him to his chair and ordered him to sit down, to which he complied. Mr. Jackson immediately began to accuse me of police brutality and assault. I explained to Mr. Jackson that when a police officer tells a prisoner to sit down, that the prisoner should do so.
>
> That I realized that pursuing an interview with Mr. Jackson regarding my open case would be entirely unproductive. Accordingly, I left the interview room.

*Defendants' Exhibit* 2.

According to Holland, the interview was witnessed by Officer Franklin and recorded on video with sound. *Defts' Ex.* 2. Jackson agrees the sheriff's office video-taped the interview but states Holland also had a tape recorder. *Resp.* at ¶ 2. Jackson, however, maintains Franklin was not in the room and therefore could not have witnessed the entire conversation. *Id.* at ¶ 13. Jackson maintains both Holland and Jackson are lying. *Id.*

Defendants submitted the video-tape of the interview as an exhibit. *Defts' Ex.* 2-A. The video-tape shows a small interview room with a small desk and a chair at the rear of the room.

*Resp.* at ¶ 14(B). To the left of the desk is a straight back wooden chair. *Id.* When Holland entered the room, he took a seat at the desk and turned the chair sideways. *Id.* at ¶ 14(C). Jackson was seated at the opposite end of the room but was not initially visible on the tape. *Defts' Ex.* 2-A.

Holland identified himself and told Jackson he was assigned to investigate a stolen vehicle case. *Defts' Ex.* 2-A. When Jackson protested that he was in jail, Holland indicated the vehicle had been stolen some time ago. *Id.* Jackson kept repeating that he had nothing to do with the car, he didn't know what was going on, he didn't know why he should talk to Holland, and he was already being charged with a felony. *Id.*

Jackson became upset when Holland wanted to read Jackson the Miranda warnings. *Defts' Ex.* 2-A. He started talking about his current charges, said he was all the sudden being charged with a felony, he stated he didn't know why he should talk to Holland, and he indicated he did not want to talk to Holland. *Resp.* at ¶ 14(G).

At this point, Jackson stood up and the back of his head and shoulders were visible on the video-tape. *Defts' Ex.* 2-A; *Resp.* at ¶ 14(I). Holland told Jackson at least four times to sit back down. *Defts' Ex.* 2-A. When Holland made these statements he was still seated in the chair at the desk. *Id.* Before Holland got up from the chair, Jackson said: "You ain't going to try to beat me up." *Id.*

At this point, Holland got up from the chair and moved towards Jackson. *Defts' Ex.* 2-A. He stated: "No, I'm not going to try to beat you up. I'm just going to sit you back down." *Id.* Holland then put a hand on Jackson's shoulder and sat him back down in the chair. *Id.* Holland

-3-

was away from the desk for just a couple of seconds and then he sat back down in the desk chair. *Defts' Ex.* 2-A.

By affidavit, Officer Daniel Jacob Franklin states he witnessed Holland's attempt to interview Jackson on December 6, 2004. *Defts' Ex.* 3 at ¶ 1. Franklin indicates he witnessed the entire conversation between Jackson and Holland. *Id.* at ¶ 5. Franklin states he witnessed Jackson becoming unruly, Holland repeatedly directing Jackson to sit down, Jackson refusing to do so, and Holland walking towards Jackson and placing his hand on Jackson's shoulder to assist him back into the chair. *Id.* at ¶ 4.

In Franklin's opinion, "Holland's actions complied with Springdale Police Department Policies and Procedures guidelines." *Id.* at ¶ 6. Franklin does not believe Holland employed excessive force against Jackson. *Id.*

Prior to Jackson's claim of excessive force, Holland had never had an excessive force complaint made against him. *Defts' Ex.* 2 at ¶ 11. Section 7.13 of the Springdale Police Department Operations Manual deals with the use of force. *Defts' Ex.* 1 at ¶ 1, ¶ 2 & exhibit 1-A. Section 7.13a deals with the use of non-deadly force and states that physical force should not be resorted to unless other reasonable alternatives have been exhausted. *Defts' Ex.* 1-B. However, an officer is permitted to use force where necessary to gain control of a situation. *Id.*

According to Chief Sid Rieff, when he receives a complaint regarding excessive force he assigns an officer in a supervisory position to investigate the complaint. *Defts' Ex.* 1 at ¶ 4. If the investigating officer informs Rieff that the complaint is unfounded, Rieff informs the person who made the complaint that the complaint was investigated and no fault on the part of the officer was found. *Id.* at ¶ 5.

AO72A
(Rev. 8/82)

If the complaint is found to have merit, Rieff impanels a review board of command staff supervisors to make a determination regarding fault. *Defts' Ex.* 1 at ¶ 6. If after an investigation the review board does not find a violation of policy, Rieff nevertheless conducts a review of the investigation and himself determines if a violation of policy has occurred. *Id.* at ¶ 7.

If the review board finds the officer was at fault, Rieff decides what the appropriate punishment should be. *Defts' Ex.* 1 at ¶ 8; *Resp.* at ¶ 38. The punishment can range from reprimand to termination. *Defts' Ex.* 1 at ¶ 9; *Resp.* at ¶ 39.

On December 6, 2004, Jackson filed a complaint against Holland. *Defts' Ex.* 1 at ¶ 10; *Resp.* at ¶ 40. In Jackson's complaint he said Holland had slammed him up against the wall and pushed his head and neck against the wall. *Defts' Ex.* 1-C. Jackson stated he had a video-tape of the incident. *Id.*

After Rieff received Jackson's complaint, he assigned an internal affairs investigator to investigate the complaint. *Defts' Ex.* 1 at ¶ 12. After investigating and viewing the videotape, Rieff indicates the investigator found Holland's actions complied with the Springdale Police Department Policies and Procedures guidelines and excessive force was not used against Jackson. *Id.* at ¶ 13.

After Rieff was informed of the investigator's finding, Rieff reviewed the video-tape. *Defts' Ex.* 1 at ¶ 14. Rieff concluded Holland did not use excessive force against Jackson. *Id.* at ¶ 15.

On January 3, 2005, Rieff wrote Jackson a letter informing him that Rieff had watched the video-tape and found Jackson's allegations to be unfounded. *Id.* at ¶ 16. Rieff said

AO72A
(Rev. 8/82)

Holland's actions complied with the Springdale Police Department Policies and Procedures guidelines. *Id.*

During Rieff's time as Chief of Police, which began in December of 2002, only one excessive force complaint, other than Jackson's, had been filed against an officer of the Springdale Police Department. *Defts' Ex.* 1 at ¶ 19. It was determined that the actions of the officers involved complied with Springdale Police Department Policies and Procedures guidelines. *Id.*

Jackson, however, contends the investigation was not properly conducted. He asserts that no one talked to him or investigated the five witnesses he claims would support his version of the events. *Resp.* at ¶ 34. Additionally, he questions why Franklin was not investigated and why Rieff assigned his own Internal Affairs investigator, Sgt. Lee Andreadis, to the complaint. *Id.* at ¶ 34-37.

According to Jackson, he was interrogated about a burglary and a stolen car. *Resp.* at ¶ 2. He maintains he was not unruly. *Resp.* at ¶ 3. Instead, he states he stood up because he wanted a lawyer, did not want to talk to Holland, was not going to sign the Miranda rights form, and wanted to return to his cell. *Id.* at ¶ 3, ¶ 4 & ¶ 5. Jackson points out Holland was the same detective who had brought charges against him in September of 2004. *Id.* at ¶ 4. Jackson indicates he believed Holland would attempt to have "fake" charges brought against Jackson. *Id.* at ¶ 3 & ¶ 14(G).

Once he stood up and said he didn't want to talk to Holland, Jackson maintains Holland should have left the room. *Resp.* at ¶ 3. Jackson points out that he had handcuffs, leg cuffs, and waist cuffs on. *Id.*

AO72A
(Rev. 8/82)

Jackson maintains Holland grabbed Jackson by the chest, slammed him back into the wall, grabbed his chin, turned his head and neck into the wall, grabbed his shoulder, and pushed him down real hard into the chair. *Resp.* at ¶ 6. Jackson indicates Holland used "real hard pressure" to push Jackson back into the chair. *Id.* at ¶ 7. Once pushed back into his chair, Jackson states he stayed there. *Id.* at ¶ 8.

Jackson indicates he told Holland that what he did was wrong and that Jackson had rights. *Resp.* at ¶ 9. Jackson asserts Holland responded: "Not in h[ere] you don't, and I can do what ever I want to you." *Id.* Jackson states he started hollering and then Holland left the room. *Id.* at ¶ 11. Because of the statement Holland made about Jackson not having any rights, what Holland did to Jackson, the way Holland looked at Jackson, and the way Holland made Jackson feel, Jackson believes he was discriminated against because he is Black. *Id.* at ¶ 52.

Jackson believes the impact of his being shoved into the wall should have moved the video. *Resp.* at ¶ 12. He believes the video-tape and five witnesses from the Washington County Sheriff's Office will support his story and show that Franklin and Holland are lying. *Resp.* at ¶ 13, ¶ 21, ¶ 23, ¶ 25, ¶ 26, ¶ 28, and ¶ 42. He has not viewed the video-tape but remembers what happened. *Id.* at ¶ 15.

As a result of the use of force, Jackson states his back, spine, shoulder, and elbow were hurt. *Resp.* at ¶ 14(Q). He states he went through pain, suffering, mental anguish, and humiliation. *Id.* He also indicates he feared for his life. *Id.* He states he went to the doctor about the injuries and is still suffering pain in his back. *Id.*

AO72A
(Rev. 8/82)

In support, Jackson submits a medical classification report from the Arkansas Department of Correction dated April 25, 2005, completed by Dr. Nnamdi Ifediora. *Plff's Ex.* 1. It notes the following restrictions:

> 1. Restrict assignments requiring prolonged crawling, stooping, running, jumping, walking or standing.
>
> 2. Restrict assignment requiring strenuous physical activity for periods in excess of 4 Hours.
>
> 4. Restrict assignment requiring handling, lifting or heavy materials in excess of 19 pounds or requiring overhead work for a period in excess of 0 Hours.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

AO72A
(Rev. 8/82)

"A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants contend they are entitled to summary judgment in their favor. Defendants first contend they have been sued in their official capacities only and are entitled to judgment in their favor because there is no evidence that the City of Springdale has a policy or custom of permitting the use of excessive force. Next, defendants contend Holland's actions were objectively reasonable and no constitutional violation occurred. Even if a genuine issue of fact exists as to whether excessive force was used, defendants contend there is no basis on which Rieff can be held liable. Finally, defendants contend there is no evidence that the plaintiff was discriminated against, or treated differently, because of his race.

### *Official and Individual Capacity Claims*

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

AO72A
(Rev. 8/82)

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

A review of the complaint and addendum show that plaintiff has failed to specifically plead whether the defendants were being sued in their official or individual capacities. However, the court has an obligation to liberally construe a pro se complaint. *Haines v. Krener*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). *See also White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). In so doing, we must keep in mind that the plaintiff is without legal expertise and he prepared his own pleading. *Bracken v. Dormire*, 247 F.3d 699, 704 (8th Cir. 2001). For this reason, despite the teachings of the Eighth Circuit cases

-10-

that require a plaintiff to specifically plead an individual capacity claim, we construe Jackson's complaint to be asserting both individual and official capacity claims.

### *Excessive Force*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, Jackson was a pretrial detainee at the time he was interviewed by Holland. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective

-11-

reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

Applying the applicable law to the facts of this case, the court concludes no genuine issues of fact exist as to whether Holland used excessive force against Jackson. A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In this case, while Holland and Jackson provide contradictory versions of what occurred during the interrogation and alleged use of force, Holland has supported his affidavit with the affidavit of Franklin and with the video-tape of the interrogation.

Holland has asserted by affidavit that the video-tape is a true and correct copy of the video-tape made of his conversation with Jackson. Jackson indicates he is without knowledge to agree or disagree with this statement. *Resp.* at ¶ 15.

Jackson maintains Franklin is lying. Jackson does not advance any specific facts for the court to consider; Instead, he makes the bare assertion that Franklin perjured himself in making his affidavit. *See e.g., Resp.* at ¶ 13. Jackson bases this assertion on the fact that the video only shows him and Holland in the interrogation room. *Id.* However, Franklin does not state in his

AO72A
(Rev. 8/82)

affidavit that he was inside the interrogation room only that he watched or witnessed the interview.

Jackson also denies that he became upset or unruly during the interview of interrogation. However, he admits he didn't want to talk to Holland and that he stood up despite having been told to sit down by Holland. *Resp.* at ¶ 14(H). Jackson states he wanted to leave. *Id.* at ¶ 14(J).

When Jackson failed to obey Holland's orders to sit down, Holland was justified in using some amount of force to obtain compliance with his orders or to sit Jackson down. The two were in a small interview room and Jackson was becoming unruly. Even wearing restraints, Jackson posed some level of risk to Holland.

The only evidence Jackson offers to support the use of unreasonable force by Holland are Jackson's own conclusory assertions. This is insufficient to survive summary judgment. *See e.g. Kuha v. City of Minnetonka*, 365 F.3d 590, 597 (8th Cir. 2003)(To survive summary judgment on an excessive force claim, the plaintiff must present enough proof to permit a reasonable trier of fact to find the degree of force the officer used was objectively unreasonable). Additionally although he maintains he suffered injuries to his spine, shoulder, and elbow as a result of the use of force, the only support he offers for these assertions is the fact that he was given a restricted work classification at the Arkansas Department of Correction on April 25, 2005. *Plff's Ex.* 1. However, nothing indicates this restriction was due to injuries he received on December 6, 2004. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003)("An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment.")(citation omitted).

Because we find no genuine issue of material fact exists as to whether Holland used excessive force against Jackson, the Rieff cannot be held liable. *Kuha*, 365 F.3d at 603. Even if a constitutional violation occurred, no evidence has been presented that Holland acted under an official policy, a widespread custom, or practice of the City of Springdale. *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004). Nor is there any basis presented on which Reiff can be held liable.

### *Discrimination*

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). An equal protection claim is stated when a fundamental right has been infringed or a state actor intentionally discriminates against the plaintiff because of membership in a protected class. *E.g., Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir. 1996). Additionally, the Equal Protection Clause also protects citizens from arbitrary or irrational state action.

In this case, Jackson contends Holland treated him differently because of his race. Nothing before the court suggests Jackson was treated differently than similarly situated detainees because of his race. Jackson has made only the most general conclusory allegations that are not supported in anyway by the record. This claim fails as a matter of law.

### IV. CONCLUSION

I therefore recommend that defendants' motion for summary judgment be granted.

-14-

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of November 2005.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)